## NATIONAL SURETY COMPANY *v.* FLETCHER SAVINGS AND TRUST COMPANY ET AL., RECEIVERS.

[No. 25,860. Filed January 15, 1930. Rehearing denied and motion to modify mandate overruled April 4, 1930.]

632

*Ralston, Gates, Lairy, VanNuys & Barnard, Willson & Willson* and *Charles W. Miller*, for appellant.

*Frank C. Dailey, William H. Thompson, Samuel D. Miller, Sidney S. Miller, Frank B. Ross* and *Lou A. Robertson*, for appellees.

PER CURIAM.—Appellees, as receivers of the German

Investment and Securities Company, brought this suit against the appellant on two fidelity bonds, in which bonds, the appellant, for a consideration, agreed to indemnify said German Investment and Securities Company against loss, not exceeding $20,000 on each bond, by reason of the fraud, dishonesty, forgery, theft, embezzlement or wrongful abstraction of one George Seidensticker, called therein "the employee," directly or in connivance with others, while the employee was engaged in the services of the employer, and while the bonds were in force. The first paragraph of complaint was based on a bond dated June 1, 1917, and the second paragraph of complaint was based on a bond dated June 11, 1915. There was a verdict and judgment in favor of appellant on said second paragraph of complaint, and same need not be considered herein. On the first paragraph of complaint, judgment for $20,000 was rendered against the appellant.

The first paragraph of complaint contains the following material allegations: One George Seidensticker was in the employ of the German Investment and Securities Company, a corporation, as treasurer and manager, from its organization in May, 1903, to July 15, 1918, when the plaintiffs were appointed receivers; that, on June 1, 1917, the appellant, for a good and valuable consideration, executed the bond sued upon, a copy of which is made a part of the complaint, that, in and by the terms of said bond, the appellant undertook and agreed to indemnify the German Investment and Securities Company against loss not exceeding $20,000 of any money or other personal property, including money or personal property for which the company was responsible, through the fraud, dishonesty, forgery, theft, embezzlement or wrongful abstraction of George Seidensticker, either directly or in connivance with others, while said Seidensticker was engaged in the service of

the company and while said bond continued in force.

In clause 5 of this paragraph of complaint, the following allegations were made: That while said George Seidensticker was in the employ of the company, as aforesaid, and while acting as treasurer and manager thereof, and, on and after June 9, 1917, he committed various acts of fraud, dishonesty, embezzlement and wrongful abstraction, directly and in connivance with others, which resulted in loss to the company, as hereinafter more particularly alleged, to wit:

(A) That after June 9, 1917, there were no net profits, earned by the company wherefrom to declare and pay dividends upon its capital stock, but, on the contrary, said company was insolvent and its capital impaired on and after said date, which facts were well known to said Seidensticker; that, after said date, said company never was in a financial condition which would enable it legally to declare and pay dividends on its stock, which was well known to said Seidensticker; that said Seidensticker dishonestly caused and permitted the books of the company to be incorrectly kept and false entries to be made therein, so that the books did not show the true condition of the company, and dishonestly caused assets and accounts which were worthless and known to him to be worthless, to be carried on the books as good assets, and dishonestly caused the value of real estate and property of the company to be increased upon the books of the company without regard to its true value, and made and permitted to be made changes in the valuation of the property upon the books of the company without regard to the true value thereof; that all of said acts were done and permitted to be done by said Seidensticker for the purpose of fraudulently and dishonestly concealing the true financial condition of the company and of deceiving the officers, directors, stockholders, depositors and creditors of the company and

particularly for the purpose of procuring the declaration of dividends upon the capital stock of the company; that said Seidensticker was at all times herein mentioned himself a stockholder and director of the company, and that, while such stockholder and director, he dishonestly caused and procured the declaration and payment of dividends upon the capital stock of the company, which the company had no power to declare or pay, because the company was insolvent and had no net profits with which to declare and pay dividends, in the sum of $6,000, which were declared and paid out of the capital of the company in the year 1918 as the result and by reason of the fraudulent and dishonest acts and conduct of said Seidensticker, and which dividends were lost to the company.

(B) That, by reason of the manner in which the books of the company were kept, the false entries made therein, and the carrying of worthless assets thereon as good assets, as hereinbefore alleged, said Seidensticker was enabled to and did make false and fraudulent statements of the financial condition of the company for the purpose of using and did use such false and fraudulent statements to procure loans from various banks and financial institutions in the city of Indianapolis, thereby, by said false, fraudulent and dishonest statements inducing said banks to loan the company money which said banks would not otherwise have done, and not only did said Seidensticker make false and dishonest statements to said banks for said purposes in writing, but he made oral statements to the officers of said banks and financial institutions, which were untrue and false, and known to him at the time to be untrue and false, as to the financial condition of the company; that as a result thereof he was enabled to and did borrow from said banks in the name of the company during the period from June 9, 1917 to July 15, 1918, the aggregate sum

of $30,000, for which sum the company became and still is responsible, and which, or a considerable part of which, the exact amount being to the plaintiffs unknown, by reason of the dishonest acts and mismanagement of said George Seidensticker, has been or will be lost to the company.

(C) That said Seidensticker, directly and in connivance with other officers, directors and employees of the company, dishonestly loaned, caused and permitted to be loaned, large sums of money belonging to and in the possession of the company, or for which the company was responsible, to persons financially irresponsible, and who were at the time such loans were made known to him to be financially irresponsible; that said loans so made and the persons to whom made during the period commencing June 9, 1917, and ending July 15, 1918, were as follows: Reliable Construction Company, $4,045.54; J. Harry Roberts, $13,875.83; Julius Keller, $908.89—aggregating the sum of $18,830.25; that all of said amounts of money so loaned were an absolute loss to the company.

(D) That the company had in its possession and was responsible for certain sums deducted from settlements with contractors on public work in the city of Indianapolis, said sums having come into the possession of the company for the agreed purpose of being deposited with the city of Indianapolis by the company as guaranties on contracts for public work; that said Seidensticker dishonestly and wrongfully diverted, abstracted and misappropriated, and caused and permitted such moneys to be so diverted, abstracted and misappropriated, and, without right, caused and permitted said moneys to be used by the company for its own purposes; that said sums aggregated the total amount of $10,000 and were wholly lost to the company; that the names of the persons and the respective amounts of moneys received

from such persons for such purposes are to the plaintiffs unknown.

(E)   That the company, as trustee, took mortgages of real estate to itself securing notes and bonds issued thereunder, representing loans made to the various owners of such real estate; that many of these mortgages and the bonds issued thereunder contained a provision giving the owner the right to pay the whole or any part of the principal before maturity at various dates therein named; that the company then sold these bonds or notes to divers and sundry of its customers; that in numerous instances such mortgagors exercised said right of prepayment, and paid to the company moneys on account of the principal of the loans before the maturity thereof; that, with full knowledge of the facts, said Seidensticker, instead of paying the moneys so received to the persons entitled thereto, namely, the holders of the notes and bonds so issued, wrongfully and dishonestly caused and permitted said moneys to be abstracted, appropriated and used and lost in the transactions of the company, and, when the holders of said notes or bonds presented them or the coupons thereon for the payment of interest, said bonds and coupons were wrongfully and dishonestly caused to be paid by said Seidensticker out of the funds in his hands, and such holders of said bonds and notes were deceived and led to believe that the mortgages securing the same were still outstanding, when, in truth and in fact, they had long since been paid off and discharged; that, during the period from June 9, 1917 until the appointment of the plaintiffs, on July 15, 1918, the sum of $9,900.54 was thus received by the company as such prepayments, and was dishonestly and wrongfully caused and permitted by said Seidensticker to be misappropriated and lost as aforesaid.

(F)   That, during said period, commencing on June

9, 1917, to and including July 15, 1918, there was placed in the hands of the company the aggregate sum of $6,590.84 by sundry patrons and customers of the company for the express purpose and solely for the purpose of purchasing what are commonly known as Barrett Law Bonds, being obligations of the city of Indianapolis issued as against assessments made on account of various public improvements therein; that said Seidensticker knew of the payment of such moneys to the company, and the purpose for which they were paid, and, notwithstanding such fact, he dishonestly and wrongfully caused and permitted said moneys to be abstracted and misappropriated to the use of the company and lost, and never bought or delivered the bonds to the persons entitled thereto, for which said moneys were paid to the company.

(G)   That, during the period commencing June 9, 1917, and ending July 15, 1918, pursuant to the advice and on the insistence of said Seidensticker, the company was operating and carrying on a general banking and trust business, contrary to the statutes of the State of Indiana under which the company was organized, and, in the conduct of such business, said Seidensticker wrongfully caused and permitted money of divers and sundry persons to be received and accepted by the company as banking deposits, and by this means the company came into possession of moneys of other persons for which it was responsible, which money aggregated during said period the sum of $64,436, all of which was dishonestly and wrongfully caused and permitted by said Seidensticker to be used by the company and was lost.

(H)   That said Seidensticker was guilty of embezzlement in this to wit, that, during all of said period, commencing June 9, 1917, and long prior thereto and continuously thereafter, said company was, and still is,

hopelessly insolvent, which fact, at all times during said period, was well known to said Seidensticker, but, notwithstanding such fact, said Seidensticker, so acting as the officer, agent and employee of the company, and knowing that said company was doing a banking business, fraudulently and dishonestly received as banking deposits from divers and sundry persons to whom the company was not indebted, money, checks, drafts, bills of exchange or other valuable things transferable by delivery or indorsement, to the aggregate amount of $64,436, all of which money was lost to the persons so depositing the same.

It was also alleged that, when the plaintiffs were appointed as receivers, as aforesaid, for the company, they at once took over and began to investigate the affairs of the company, and found them to be in a confused and almost unintelligible condition; that expert accountants were promptly employed to make an examination of the books, papers and affairs of the company and continued their labor for a period of months; that, at the earliest practicable moment after the plaintiffs had reason to believe that there had been acts within the purview of said bond committed by said Seidensticker, which had resulted in loss, they gave written notice thereof, addressed to the defendant at its home office, which notice was received and the receipt thereof acknowledged by the defendant, and the defendant knowing that the said George Seidensticker had committed acts which would create a liability against defendant on said bond, thereupon invited the plaintiffs to file their proof of loss, as was required by the terms of the policy, which proof was duly filed; that thereby said defendant waived the provisions of said bond concerning the giving of proof of loss to the defendant within a specified time after the discovery of the same and waived the defects and informalities, if any,

in the notice first given by the plaintiffs; that the defendant, in January, 1919, returned the proof of loss furnished to it by the plaintiffs, denying liability on such bond for the losses which had occurred through the acts of said Seidensticker and which were within the purview of said bond; that plaintiffs had duly demanded of the defendant the payment of said sum of $20,000, and that defendant had refused and still refuses to pay same, or any part thereof, and that plaintiffs had been damaged in that sum. Judgment for $20,000 was demanded.

Appellant demurred to the complaint, and to each paragraph thereof, separately and severally, and also to each of the several alleged breaches of the bonds designated by the letters A to H, inclusive, for want of facts. The demurrer was overruled to the first paragraph of the complaint, and to each specification thereof, except the specification designated H of clause 5, to which specification the demurrer was sustained.

It is contended by appellant that the demurrer to the first paragraph of the complaint and each breach of the bond therein alleged should have been sustained for these reasons: That no adequate compliance is alleged as to the provisions of the bond relative to the filing of notice and proof of loss; and that there are no allegations that the dishonest acts of the bonded employee resulted in loss to the company.

The bond sued on provided, as a condition precedent, that the employer, upon the discovery of any dishonest act, "shall, at the earliest practicable moment, and at all events not later than five days after such discovery," give the surety written notice thereof. The first paragraph of the complaint alleged that the plaintiffs gave notice "at the earliest practicable moment after the plaintiffs had reason to believe that there had been acts within the purview of said bond com-

mitted by said Seidensticker which resulted in loss," saying nothing about the five days, but that defendant "thereupon invited plaintiffs to file proof of loss as required by the policy," and thereby waived the five-day provision. It is the claim of appellant that this averment is not sufficient. The averments of the complaint as to notice are sufficient to withstand a demurrer.

Certain conclusions as to loss are pleaded in the specifications of the alleged breaches of the bond. But it appears from the facts therein stated that the German Investment and Securities Company did not suffer any loss from the fraud, dishonesty, forgery, theft or wrongful abstraction of Seidensticker as to alleged breaches B, D, E, F and G. The bond was not for the benefit of any other corporation or person. The demurrer as to these alleged breaches of the bond should have been sustained. The ruling of the court in overruling the demurrer to the alleged breaches of the bond, A and C, was correct. The first paragraph of complaint, with the allegations as to breaches of the bond, A and C, states facts sufficient to constitute a cause of action against the defendant.

It is provided in §368 Burns 1926, that no objection taken by demurrer, and overruled, shall be sufficient to reverse the judgment, if it appears from the whole record that the merits of the cause have been fairly determined. The jury, in answer to interrogatories submitted by the court, stated that the board of directors of the company declared a dividend upon its capital stock on or about June 3, 1918, and that the sum so paid as a dividend, with interest at the rate of six per cent to April 8, 1921, after deducting the sums recovered back on account thereof by the receivers, amounted to $3,411.81. And the jury, in answer to interrogatories submitted by the court, stated that the company sustained losses as the result of its dealings

with J. Harry Roberts during the period beginning June 9, 1917, and ending June 9, 1918, and that said losses with interest at the rate of six per cent to April 8, 1921, amounted to $13,217.41. It does not appear that other losses resulted from dishonest acts of Seidensticker as to alleged breaches of the bond A and C. So, part of the judgment for $20,000 must have been predicated on some of the other alleged breaches of the bond. It cannot be said that the cause has been fairly determined. Other alleged errors relied upon for reversal will not be reviewed, as they may not arise upon another trial.

The judgment is reversed, with instructions to the lower court to sustain the demurrer to alleged breaches of the bond B, D, E, F and G of the first paragraph of the complaint, and to overrule the demurrer to the first paragraph of complaint containing alleged breaches of the bond A and C, and for further proceedings in accordance with this opinion.