OCTA ROBBINS, APPELLANT, v. THE NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY, A CORPORATION, ET AL., APPELLEES.

157 N. W. 2d 188

Filed March 15, 1968.    No. 36734.

Leslie D. Carter and Edward A. Mullery, for appellant.

Crossman, Barton & Norris, for appellee National Life & Acc. Ins. Co.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is an action to reform a policy of life insurance together with certain applications for reinstatement and an application for a change in the type of the policy. The action having been brought subsequent to the death of the insured, the plaintiff, in addition to reformation, seeks a money judgment for the amount due thereunder after reformation together with costs and attorney's fees. The trial court found for the defendant and dismissed the action. The plaintiff has appealed.

On November 1, 1963, the defendant, The National Life and Accident Insurance Company, issued a policy of life insurance to Nathelee R. Morgan in which the plaintiff, Octa R. Robbins, the mother of the insured, was the named beneficiary. Nathelee died on February 27, 1966, a claim for the proceeds of the policy was duly

made, and payment declined on the basis of the fraud of the insured in obtaining reinstatements after the policy had lapsed for nonpayment of premiums and in an application for a change in the type of the policy. The evidence shows that the policy was reinstated three times, July 11, 1964, September 19, 1964, and October 26, 1964, after it had lapsed for nonpayment of premiums. The application for the change in the type of policy was also filed on October 26, 1964, and a supplemental agreement, pursuant thereto, was issued by the insurance company and attached to the original policy.

The insurance company filed its amended answer and cross-petition, alleging that the insurance policy lapsed on the three occasions mentioned for nonpayment of premiums; that Nathelee filled out and signed applications for reinstatement on each of the three occasions; that certain answers as to her condition of health contained in the applications for reinstatement were false; that Nathelee knew such answers were false; that the answers were relied on by the insurance company; and that the insurance company would not have reinstated the policy if the questions had been truly answered. The insurance company alleged that it tendered a refund of premiums paid on the policy, which tender was refused. The insurance company prayed for a judgment that the policy was never reinstated, that the reinstatements were void, and that the policy be canceled and held to be of no force and effect.

It is contended by the plaintiff that the agent of the insurance company had knowledge of the physical condition of the insured at the time the applications for reinstatement and the application for a different type of policy were taken, that the knowledge of the agent constituted knowledge by the insurance company, and that the insurance company is estopped to assert a lack of knowledge of the alleged fraud. The following rule is relied upon it in support of this theory: " '* * * It being within the scope of his agency to collect premiums, it

must be held that his knowledge was the knowledge of his principal, and hence, when he collected premiums, and paid them to appellant, with knowledge of the facts, such knowledge must be imputed to it.' " Arendt v. North American Life Ins. Co., 107 Neb. 716, 187 N. W. 65. See, also, 3 Couch on Insurance 2d, § 25:132, p. 655; Waters v. Nebraska Mut. Ins. Co., 108 Neb. 1, 187 N. W. 125; Ross v. First American Ins. Co., 125 Neb. 329, 250 N. W. 75. But information coming to a soliciting agent or a premium collector after the issuance of a policy or a reinstatement of a lapsed policy for nonpayment of premiums, in which he participated, is not imputable to his principal. Krug Park Amusement Co. v. New York Underwriters Ins. Co., 129 Neb. 239, 261 N. W. 364. See, also, 3 Couch on Insurance 2d, § 26:132, p. 655.

Plaintiff testified that from November 1, 1963, the date of the policy, to March 1964, Fred Fox, an insurance salesman and collection agent for the insurance company, called at her home, on numerous occasions. She testified that he came there to collect premiums on insurance policies held by Nathelee, herself, and a grandson. Nathelee was residing with her during the period involved in this litigation. Nathelee was employed as a waitress and was not always there. She said that his frequent visitations were made to collect premiums and to solicit additional insurance from her and her relatives. These visitations continued into March 1964. She informed Fox that Nathelee was in the hospital in January 1964 and that Fox visited her in the hospital at that time. She said that Fox visited her both as an insurance agent and as a friend before and after Nathelee's death. She said, also, that Fox said that if Nathelee was unable to pay the premiums, he would pay it for her. Plaintiff said that she saw Fox four times from April 1 to July 11, 1964, and that he was visiting just as a friend. Premiums were paid by Nathelee until June 1964, when the policy lapsed for the first time. One Julian Riviera came to plaintiff's home in July 1964, about a reinstatement of the policy.

Riviera handled all the reinstatements. She did not inform Riviera that Nathelee had had an operation, nor did she inform him that the operation was a hysterectomy induced by a malignant tumor, known to the medical profession as a squamous cell intraepithelial carcinoma of the cervix of the uterus, which we shall hereafter refer to as a cancer.

Fox testified that he was a staff manager for the insurance company on November 1, 1963, and that he sold the original insurance policy to Nathelee on that date. As staff manager he had supervision over several specific areas. He or the agent assigned to the area in which Nathelee resided collected the monthly premiums. He testified that he did not know of the lapse in premium payments or the reinstatement on July 11, 1964. He said he did not know of the subsequent lapses or reinstatements, or the application for change of policy. He denied that he ever offered or agreed to pay any default in the payment of premiums for Nathelee. He said he did not visit plaintiff or Nathelee very often. He testified that he did visit Nathelee in the hospital in January 1964, but did not discover the reason for the hospitalization. He made no inquiry because the policy was in force and had never been in default of premium payments to that time. He said that prior to the time of the first default and application for reinstatement, he was succeeded as staff manager for the area by Riviera and that the latter had the sole handling of the collections, reinstatements, and the change in policy terms without any knowledge on his part.

Riviera testified that he was employed by the insurance company in 1958 and had continued in its employ until March 18, 1966. He first met Nathelee and plaintiff in June 1964. At that time he called in reference to Nathelee's insurance policy which was about to lapse for nonpayment of the premium. He handled the three reinstatements here involved, the first under date of July 11, 1964. He testified that in each instance he asked Nathelee each of the health questions contained on rein-

statement application blanks, correctly checked her answers to the questions thereon, and handed the application to her which she then signed. There is no evidence in the record disputing this evidence and no contention is made that the answers of Nathelee were not correctly recorded on the application. The purport of her answers on the applications was that she was then in good health, that since the policy was issued she had not consulted or been treated by a doctor, or had any injury, illness, or operation, or been confined to a hospital or other institution for any reason. It is not here disputed that she had consulted a doctor on many occasions, that she had been confined to a hospital, and that she had had a serious operation for the removal of a cancer. Riviera had visited plaintiff and Nathelee at their home in collecting premiums. He stated that he never heard anything in conflict with the answers given by Nathelee in her applications and, while he knew Fox, he was never told anything concerning the health of Nathelee by him.

There is no evidence in this record that Fox gained any knowledge inconsistent with the statements made by Nathelee in her signed applications for reinstatement. At the time the applications were made he had been transferred from the area and said that he had nothing whatever to do with the applications for reinstatement. He said that while he was working the area before any policy lapse occurred he gained no information contrary to the fraudulent statements made in the applications. It is true that Fox knew that Nathelee was hospitalized at a time when the policy was in force and before any default in premium payments had occurred. This evidence will not sustain a finding that Fox obtained knowledge imputable to the insurance company that would estop it from asserting the fraud of Nathelee in falsely answering the health questions set out in the applications for reinstatement. The testimony of Riviera indicates that he had no such imputable knowledge, nor is it claimed by the plaintiff that he did. We

necessarily hold that the record fails to establish that any agent of the insurance company had any knowledge obtained within the scope of his agency to collect premiums and therefore imputable to his principal which would estop the insurance company from asserting the fraud contained in the applications for reinstatement.

The plaintiff contends that the insurance company is estopped to assert the nonpayment of the premium as a defense for the reason that the lapse of the insurance policy was the fault of the collection agent of the insurance company and not the insured. There are cases which hold, under certain circumstances, that an insurance company may be estopped to assert the nonpayment of a premium as a defense. Such a rule has been applied where it was customary to have a collector call for the premium which was relied on by the insured and he failed to call at the direction of the company to encourage a lapse. Carey v. John Hancock Mut. Life Ins. Co., 114 App. Div. 769, 100 N. Y. S. 289. Where a notice of annual premium was sent for 10 years and the company, desiring a lapse, failed to send a notice for the eleventh year, believing the insured relied on it, the company was held to be estopped. Pierce v. Massachusetts Accident Co., 303 Mass. 506, 22 N. E. 2d 78. A past course of conduct of acceptance of premiums after the grace period may establish a waiver by the insurer to declare a forfeiture for failure to pay premiums on the stipulated date. McCary v. John Hancock Mut. Life Ins. Co., 236 Cal. App. 2d 501, 46 Cal. Rptr. 121.

In the instant case we find no facts to sustain an estoppel. The general rule is: An estoppel to assert a lapse of a policy of insurance for nonpayment of premiums cannot be successfully asserted unless an established custom by the insurer inconsistent with the policy is shown, upon which the insured relied to his injury, and that it would be inequitable under the circumstances to enforce the provisions of the contract providing for the lapse of the policy for nonpayment of the premium.

There is no evidence of a custom by the insurance company to collect premiums upon which the insured relied. For ought this record shows the insurance company's collection agent sought without success to collect the unpaid premiums. There is no evidence of any kind to show that the nonpayment of the premiums was the fault of the agent of the insurance company and not the insured. Facts are not pleaded or proven that would support an estoppel. It is fundamental that a party alleging an estoppel must plead and prove the facts upon which the estoppel is based. U. S. Tire Dealers Mut. Corp. v. Laune, 139 Neb. 26, 296 N. W. 333; Bors v. McGowan, 159 Neb. 790, 68 N. W. 2d 596. The cases cited by the plaintiff are clearly distinguishable. The defense of the estoppel of the insurance company to show the lapse of the policy for nonpayment of premium and its subsequent fraudulent reinstatement is without merit.

In the policy involved here is a provision providing that the policy and the application therefor constitute the entire contract. It is provided by section 44-502, R. R. S. 1943, that the policy shall constitute the entire contract between the parties, but if the company desires to make the application a part of the contract it may do so, provided a copy of the application is attached to the policy when issued and the policy shall contain a provision that the policy and the application constitute the entire contract between the parties. The provisions of the statute were complied with in the instant case. It is the contention of the plaintiff that the insurance company cannot defend on the fraud of the insured contained in an application for reinstatement which is not attached to the policy under the provisions of this statute. The applications were not attached to the original policy. There are two reasons why there is no merit to this contention. In the first place, a reinstatement may be made in writing within 5 years from such default upon evidence of insurability satisfactory to the company and payment of arrears of premiums with interest

and the payment or reinstatement of any other indebtedness to the company on the policy. There is no requirement in the statute or in the policy that the application for reinstatement be attached to the policy. In the second place, section 44-502, R. R. S. 1943, is in terms made inapplicable to policies of industrial insurance or where the premiums are payable monthly or oftener. The premiums in this case were payable monthly and are not subject to the requirements of section 44-502, R. R. S. 1943, even if otherwise it came within its terms.

Dr. John Allely, a general medical practitioner, was Nathelee's personal physician. He testified that Nathelee had consulted him on several occasions before and after the date of the policy. On December 30, 1963, she consulted him about irregular menstrual periods and he eventually thought she had a female infection in the pelvic region. He referred her to Dr. Boelter, an obstetric-gynecologist specialist. After a consultation between the two doctors, they suspected a malignancy and on January 3, 1964, she was placed in the hospital for further tests. It was determined that she had a squamous cell intraepithelial carcinoma of the cervix of the uterus and on January 10, 1964, she was operated upon, the operation being a hysterectomy which included the removal of the malignancy. Dr. Allely states that the malignant tissue was wholly removed and a complete cure of the cancer effected. She was under the care of Dr. Allely for several months after the operation and until after one or more of the applications for reinstatement were made out. Dr. Allely testified that the hysterectomy completely removed and cured the malignancy and, in his opinion, Nathelee was in good health thereafter. This conclusion, he said, is irrespective of the general medical view that a lapse of 5 years without evidence of recurrence is necessary to make such a determination. Dr. Allely stated that Nathelee suffered a ruptured aneurysm of the brain on September 24, 1965. On February 26, 1966, she again suffered a ruptured aneurysm

from which she died on February 27, 1966.

Dr. J. P. Glover, Jr., associate medical director of the defendant insurance company testified that applications for reinstatement submitted to the company which indicate no health problems are handled by lay underwriters, but when there is health information given or inferred they are referred to the medical department for evaluation. Where the answers to the questions on the application for reinstatement indicate a standard risk, but such answers are false, no method of evaluation or the securing of additional information exists, and the insurability of the applicant cannot be determined. Under the medical rules adopted by the company, the type of cancer here involved would require a postponement for insurance for 3 years, in other words that the applicant was not insurable for 3 years. He testified that true answers on applications for reinstatement are material to the risk and, if the true facts had been known, the lapsed policy would not have been reinstated.

The evidence conclusively establishes the falsity of the answers to health questions contained in the applications for reinstatement. Where questions in an application for the reinstatement of a lapsed insurance policy for the nonpayment of premiums calls for answers peculiarly within the knowledge of the applicant, untrue answers relating to a matter material to the risk and relied on by the insurer, if timely advantage is taken thereof by the insurer, will void the policy. Gillan v. Equitable Life Assurance Soc., 143 Neb. 647, 10 N. W. 2d 693, 148 A. L. R. 496. The proof of waiver of the fraud, or estoppel to assert it by the company, is clearly insufficient and the policy of insurance is void because of the fraud of the insured contained in the applications for reinstatement. No basis for the reformation of the policy or the applications for reinstatement is shown and the trial court properly dismissed the action.

AFFIRMED.