OMAHA BANK FOR COOPERATIVES, A FEDERALLY CHARTERED INSTRUMENTALITY, APPELLANT, V. THE AETNA CASUALTY AND SURETY COMPANY, A CORPORATION, APPELLEE.

301 N.W.2d 564

Filed January 30, 1981. No. 42981.

Gerald P. Laughlin and Robert J. Banta of Baird, Holm, McEachen, Pedersen, Hamann & Haggart for appellant.

John R. Douglas and Ronald F. Krause of Cassem, Tierney, Adams, Gotch and Douglas for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

PER CURIAM.

This is an action by plaintiff, Omaha Bank for Cooperatives (hereinafter Bank), for a declaratory judgment to determine the liability, if any, of the defendant, The Aetna Casualty and Surety Company (Aetna), under a banker's blanket bond written by Aetna to insure a group of farm credit banks, including the plaintiff Bank. Aetna filed a motion for summary judgment; the Bank filed a motion for partial summary judgment. Evidence was introduced. The District Court for Douglas County, Nebraska, found there was no issue as to any material fact, that Aetna had no liability for the Bank's claim, and rendered judgment accordingly. The Bank then appealed to this court.

There is no dispute on the facts, and the Bank's various assignments of error raise only one issue: whether the trial court wrongly interpreted the provisions of the bond.

The evidence shows that the Bank was sued in the courts of Iowa by one of its borrowers, Siouxland Cattle Cooperative, for damages allegedly caused by false representations made by one of the Bank's lending officers to Siouxland in connection with a loan. The executive committee of the Bank had agreed to make Siouxland loans not exceeding $1.4 million, the proceeds of which would be used to construct and commence operation of a 3,500-head feedlot. Robert Zuber, a Bank officer, allegedly promised Siouxland that the Bank would, in the future, make such additional loans to Siouxland as were necessary for expanding its feedlot to a 5,000-head capacity. Siouxland allegedly accepted the $1.4 million commitment in reliance on Zuber's promises. When Siouxland requested the Bank to make the future loans promised by Zuber, the Bank refused to make such loans. Siouxland asserted it was unable to repay its loan from the Bank because the 3,500-head feedlot was not economically viable. Siouxland claimed to have incurred

damages as a result of its reliance upon Zuber's promises. The Bank's executive committee had not approved any further financing and expansion of the feedlot; it would not have loaned the $1.4 million if it had known that additional money was, as alleged, required to make the feedlot economically feasible and thus enable Siouxland to repay.

The cause in Iowa was submitted to the jury on the bases of Zuber's alleged misrepresentations and promise of future loans. It was instructed on the elements of fraud and that the Bank was legally responsible for Zuber's conduct. The jury rendered a verdict for Siouxland. Upon appeal to the Iowa Court of Appeals, the jury was found to have been erroneously instructed in some respect and the case was remanded for a new trial. The case is still pending.

In the present declaratory judgment action, the Bank sought a declaration that in the event Siouxland secured a final judgment on the underlying claim, the Bank's satisfaction of such judgment would constitute a valid and collectible loss under the bond involved here, and that the Bank would be entitled to indemnification for all reasonable attorney fees and court costs incurred and paid in defense of the underlying claim.

The bond provided coverage for various types of losses. Coverage provision A, involved in this action, is: "Any financial loss through any dishonest, fraudulent or criminal act of any Employee, as hereinafter defined, wherever committed, or through the failure of any Employee to properly or faithfully perform the duties imposed upon or entrusted to such Employee under any act of Congress or rules and regulations of the Farm Credit Administration, or imposed upon or entrusted to such Employee by the Farm Credit Administration or any of the above named Insured or by the Chairman of the Presidents Committee of the Farm Credit Banks of Omaha, or the Farm Credit Board of the Omaha District; and also any loss of

Property as hereinafter defined, through any dishonest, fraudulent or criminal act of any Employee, wherever committed."

The bond also contained the following provision, which we refer to at this time because of contentions the Bank makes founded on the language of that provision: "The Underwriter will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this bond. Such indemnity, shall be in addition to the amount of this bond."

Although the trial court did not issue a memorandum opinion stating the reasons for its determinations, both parties agree that the court founded its decision upon our holdings in *KAMI Kountry Broadcasting Co. v. United States F. & G. Co.*, 190 Neb. 330, 208 N.W.2d 254 (1973); *Foxley Cattle Co. v. Bank of Mead*, 196 Neb. 587, 244 N.W.2d 205 (1976); and *Bank of Mead v. St. Paul Fire & Marine Ins. Co.*, 202 Neb. 403, 275 N.W.2d 822 (1979).

The basic issue in this appeal is whether the quoted coverage under the banker's bond provides indemnity to the insured Bank for a judgment obtained against the Bank because of alleged fraud and misrepresentation by a Bank employee while dealing with a third party. Stated in another way, the question is whether or not the bond insured the Bank against the consequences of its own fraud.

The Bank, in its brief, asserts that our holdings in the above-cited cases are distinguishable from the present case and also cites a line of authority apparently contradictory to our holdings in the above cases. Aetna maintains that our holdings cited above are not distinguishable and govern the outcome in this case.

We will first discuss the Bank's assertion that the cases are distinguishable and not controlling here and the Bank's other contentions.

In *Foxley Cattle Co. v. Bank of Mead, supra,* Foxley obtained a judgment against the bank, founded upon a fraudulent representation made by one of the bank's employees which caused loss to Foxley. After obtaining the judgment, it brought garnishment proceedings against the Bank of Mead and St. Paul Fire & Marine Insurance Company as garnishee. Bond provisions in that case were, with one exception which we will mention later, virtually identical to the provisions here. We held that the legal liability of a named insured to a third party does not create legal liability of the insurer under a blanket honesty bond to such third party. For precedent, we relied upon *Ronnau v. Caravan International Corporation,* 205 Kan. 154, 468 P.2d 118 (1970), just as we did in deciding the earlier case of *KAMI Kountry Broadcasting Co. v. United States F. & G. Co., supra. Bank of Mead v. St. Paul Fire & Marine Ins. Co., supra,* involved essentially the same question as the Foxley case, except in that case the Bank of Mead, against whom the judgment had been obtained, brought the action to recover directly against St. Paul on the bond.

The differences which the Bank relies upon to distinguish this case from our above-mentioned prior decisions and make them inapplicable are the following: (1) In *Foxley Cattle Co. v. Bank of Mead, supra,* the Bank of Mead had not satisfied the judgment and therefore it had as yet suffered no loss. The Bank asserts, therefore, that Foxley merely stands for the proposition that the insured could not recover on the bond until it had paid the judgment. The Bank argues further that, as a result of the fraudulent transaction which gave rise to the judgment, the Bank of Mead had received money, thus the Bank of Mead had no actual loss but would be merely returning money it had fraudulently obtained from Foxley. The Bank

concludes that if the Bank of Mead had satisfied the tort liability to the third party, it could have recovered under the bond. (2) The bond in the present case contains the provision, which we earlier mentioned, that Aetna will indemnify the Bank against "court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit . . . brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage" which, if established, would constitute a valid and collectible loss sustained by the Bank under the bond. The Bank, with reference thereto, says, and we quote from the brief: "If that provision does not contemplate that the Bank may incur a loss covered by the Bond by reason of defending and satisfying a liability to a third party, it has absolutely no meaning or application at all." (Emphasized in brief.) (3) The faithful performance provision of the bond in the case at hand covers this claim because the alleged misrepresentation and false promise to the borrower was not only a fraud on the borrower, it was a breach of the employee's duty to the Bank and thus a fraud on the Bank. Therefore, the Bank argues, the faithful performance provision of the insuring clause earlier quoted (and not included in the insuring clause in *Foxley*) covers the losses resulting from any judgment against the Bank. The Bank cites three cases which it claims support the proposition.

An analysis of our opinions in the two *Bank of Mead* cases and the *KAMI* case demonstrate the claimed differences either do not exist or are not differences which make the case holdings inapplicable.

One of the specific holdings in *Foxley Cattle Co. v. Bank of Mead, supra,* was that legal liability of a named insured to a third party does not create legal liability of the insurer under a blanket bond to such third party. In so saying, we were referring to a specific part of the bond coverage which indemnified the insured for any loss through any "dishonest, fraudulent

or criminal act" by any employee. We cited and relied upon our prior holding in *KAMI Kountry Broadcasting Co. v. United States F. & G. Co.*, *supra*, and, as already noted, the Kansas case of *Ronnau v. Caravan International Corporation*, *supra*. We specifically quoted and relied upon language in *Ronnau*, saying: "'Under no reasonable construction of the bond can it be said to insure against Caravan's liability to third persons, nor can it be considered to be a third-party beneficiary contract. It was a contract designed solely for the benefit of the formal parties thereto, insuring against loss to Caravan of the described money or property due to the fraudulent or dishonest acts of its employees. . . . The protection of the bond was for the protection of Caravan alone. It was in the nature of a personal insurance contract. The appellant was not a party to the contract, was not named or referred to therein, and had no legal rights thereunder.'" *Foxley, supra* at 594, 244 N.W.2d at 209. We denied the garnishment.

The fact that the Bank of Mead had not, in fact, paid its third-party liability was not at all significant. This was made clear by the sequela to that case, *Bank of Mead v. St. Paul Fire & Marine Ins. Co.*, *supra*, in which St. Paul asserted the defense of res judicata. We noted the bank's response to that defense in these words: "The Bank of Mead contends that the judgment in the garnishment action only adjudicated the question of the liability of St. Paul to the bank's judgment creditor Foxley Cattle Company as a third-party beneficiary, and not the question of the liability of St. Paul to its own insured on the fidelity bonds." This court went on to state: "We do not agree with this contention. The basic and underlying issue involved in the garnishment action was whether the judgment obtained by the Foxley Cattle Company against the Bank of Mead constituted a loss of the nature insured against." *Bank of Mead v. St. Paul Fire & Marine Ins. Co.*, *supra* at 405, 275 N.W.2d at 824.

In *KAMI Kountry Broadcasting Co. v. United States F. & G. Co., supra,* the insured had paid the defrauded party its claim. We decided that case on alternative grounds, saying not only had KAMI paid a claim which it was not legally obligated to pay but even if it had been liable there was no coverage of the third-party claim. We said (after quoting from *Ronnau v. Caravan International Corporation, supra*): "It is true that in this case the action is brought by the indemnitee. However, the reasoning in the cited case applies and the situation here would be the same had the bank not been paid by KAMI and the bank sought recovery on the bond." *KAMI, supra* at 334-35, 208 N.W.2d at 256. In *KAMI*, we also cited a decision by the Supreme Court of Indiana, *National Surety Co. v. Fletcher Sav. & Tr. Co.*, 201 Ind. 631, 169 N.E. 524 (1930). Referring to the Indiana case, we noted: "In that case, insofar as it is applicable here, the Indiana court held the conduct of the manager of a corporation in making false representations to banks as to the financial condition of the corporation in order to secure corporate loans did not afford a basis for the bank to recover from the insurance company on the fidelity bond since the loss was not sustained by the corporation." *KAMI, supra* at 335, 208 N.W.2d at 257. Two of our judges dissented in the *KAMI* case. They raised exactly the same argument which the Bank makes in this case. It appears that we rejected that position. In both of the *Bank of Mead* cases which followed, the opinion was unanimous.

The Bank's second claimed distinction arises from the provision of the bond providing for payment of costs and attorney fees in defending third-party claims. It argues that this provision is meaningless unless there can be liability to a third party. There are a number of responses to this contention. First, the coverage involved here is that under coverage provision A which we have previously quoted. There are provisions in the bond at issue under which the insured

would be liable to third parties. These are indicated in the portion of the bond which defines the term "property." The term property, in addition to other things, includes: "[A]nd other similar instruments, documents or securities, in which the Insured has a pecuniary interest, *or which are held by the Insured as collateral or as bailee, trustee, custodian, agent, or in any other capacity, and whether or not the Insured is liable therefore* [sic]." (Emphasis supplied.) Second, the bond involved in the *Bank of Mead* cases contained the same provision relative to payment of attorney fees and costs as the bond here. We noted this in *Bank of Mead v. St. Paul Fire & Marine Ins. Co., supra,* where we said at 406-07, 275 N.W.2d at 825: "The Bank of Mead attempts to raise a new issue by alleging that although it has not paid the Foxley Cattle Company judgment, it has paid costs and expenses of $25,000 in defending the various suits resulting from the fraudulent misrepresentations of its bank president. The obligation of St. Paul to indemnify the insured for court costs and reasonable attorney's fees incurred and paid by the bank in defending a suit relates only to: '* * * any suit or legal proceedings brought against the insured to enforce insured's liability or alleged liability on account of any loss, claim or damage which, if established against the insured would constitute a valid and collectible loss sustained by the insured under the terms of this bond.'" We then said: "The trial court correctly held that since this court has previously determined that the Foxley Cattle Company judgment was not a 'valid and collectible loss sustained by the insured under the terms of the bond,' St. Paul is not obligated to pay costs or attorney's fees expended by the Bank of Mead in the defense of the prior actions."

The third distinction raised by the Bank relates to the provision for faithful performance. The bond in question does afford added coverage to the insured, i.e., it covers direct losses to the insured not only from

dishonest and fraudulent acts of its employees but also direct losses for failure to faithfully perform duties, but not involving fraud or dishonesty. The language from *Ronnau v. Caravan International Corporation, supra,* which we quoted with approval, indicates that faithful performance provisions were involved in that case. We have examined the three cases cited by the Bank in connection with this contention. They are: *Thurston County v. Chmelka,* 138 Neb. 696, 294 N.W. 857 (1940); *Castetter v. Barnard,* 98 Ind. App. 210, 183 N.E. 681 (1932); and *National Surety Co. v. State, ex rel.,* 90 Ind. App. 524, 161 N.E. 832 (1928). None of these cases held that the surety was liable, under this type of bond, to third parties because of unfaithful performance of duty by the insured's employee. None involved or covered losses sustained by the insured because of its tort liability to third parties. When we adopted the reasoning in *Ronnau v. Caravan International Corporation, supra,* we implicitly rejected the few cases to the contrary.

We hold that coverage provision A of the banker's bond, indemnifying against dishonest, fraudulent acts or failure to perform faithfully, does not insure the Bank against the consequences of its own torts.

In passing, we note that coverage provision A contains provisions requiring the employee to faithfully perform duties imposed or entrusted to such employee under any act of Congress or rules and regulations of the Farm Credit Administration, or entrusted to the employee by the Farm Credit Administration, or any of the named insureds as well as certain other identifiable entities. Those provisions are not involved in this case and, of course, we have no occasion to determine the effects of such provisions.

AFFIRMED.

McCOWN, J., dissenting.

The majority opinion holds that the coverage of a banker's blanket bond indemnifying the insured bank

against any financial loss through any dishonest, fraudulent, or criminal act of any employee or through the failure of any employee to properly or faithfully perform the duties imposed upon or entrusted to such employee by the named insured does not insure against the consequences of its own torts.

The majority opinion now extends that rule to a case in which the employee's representations which constituted the tort were made knowingly and intentionally; were fraudulent as to the employer insured as well as the third party; were unauthorized and beyond the scope of the employee's actual authority and in violation of the employer's specific policy; and where the conduct of the employee constituted a failure to properly and faithfully perform the duties imposed upon him by the insured. Any tort liability to the third party in this case rests solely on the knowing, willful, fraudulent, unauthorized, and unfaithful actions of the individual employee, and the tort liability of the insured is strictly vicarious because of the employee-employer relationship. The trial court specifically found that the employee failed to faithfully perform his duties and the majority opinion does not dispute the finding but simply holds that a loss resulting through a failure of an employee to faithfully perform duties is not a loss covered by the policy if it is based on a tort liability to a third party, whether the liability is vicarious or otherwise.

The majority opinion rests that holding upon the cases of *KAMI Kountry Broadcasting Co. v. United States F. & G. Co.*, 190 Neb. 330, 208 N.W.2d 254 (1973); *Foxley Cattle Co. v. Bank of Mead*, 196 Neb. 587, 244 N.W.2d 205 (1976); and *Bank of Mead v. St. Paul Fire & Marine Ins. Co.*, 202 Neb. 403, 275 N.W.2d 822 (1979). Those cases do not support the conclusion. In *KAMI* this court said: "The pleadings present the concise issue of whether the defendant is liable on the bond because KAMI, in order to avoid the loss of a customer, paid the note forged by its manager and

on which it was not legally liable and from which it did not receive the proceeds." *Id.* at 332, 208 N.W.2d at 255. The final paragraph of that case reads: "The original loss suffered by the bank in this case is not, under the facts alleged, converted into a direct loss by the insured because it determined to pay the bank on an obligation for which it was not liable." *Id.* at 335, 208 N.W.2d at 257.

In the present case there can be no doubt that legal liability on the bank arose from the judgment, and the trial court specifically found that if any judgment on Siouxland's claim becomes final and is paid by the bank, the bank will sustain a financial loss. The record supports those findings.

The *Bank of Mead* cases are clearly distinguishable. In the *Bank of Mead* cases the fraudulent representations made by the bank officer were fraudulent only with respect to the third party but were not fraudulent with respect to the employer bank and the bank received the proceeds resulting from the misrepresentations. In fact, the parties in the *Bank of Mead* cases stipulated that at the time the representations were made the officer was acting within the scope of his employment with the bank. There was no evidence that the officer did not have actual authority to do what he did nor that he knowingly exceeded his actual authority.

Courts have held that under a blanket indemnity bond against loss sustained due to dishonest, fraudulent, or criminal acts of employees, an employer insured may recover where the fraudulent misrepresentations made by its employee to a third party were fraudulent as to the employer insured as well as to the third party. See *National Surety Corporation v. Rauscher, Pierce & Co.*, 369 F.2d 572 (5th Cir. 1966).

An analysis of the cases indicates that where the dishonest or fraudulent acts of an employee as to a third party are authorized or permitted by the employer, and the loss arises out of the employer's liability to the

third party created by the acts, indemnity is not allowed. The cases also indicate that where unauthorized acts of an employee are dishonest or fraudulent as to a third party and such acts are also dishonest or fraudulent as to the employer insured, and loss results, indemnity may be allowed, even in the absence of a faithful performance provision.

Typical of similar statements elsewhere, Couch on Insurance § 46:101 at 190 (2d ed. 1965) states: "The loss covered by an employee's fidelity bond is not necessarily limited to loss directly resulting from the employee's act, such as embezzlement. To the contrary, it may include liability on the part of the insured resulting from the application of the principles of vicarious liability. In other words, a bond insuring against loss sustained by reason of dishonesty, fraud, embezzlement, etc., covers losses imposed by the creation of liability to third persons. To illustrate, it has been held that a loss may be suffered by the insured through being required to make good an obligation to a third person created by the fraud of its employee perpetrated on such third person."

In addition to all of the foregoing, in the *KAMI* and the *Bank of Mead* cases there was no policy coverage for losses resulting through the failure of an employee to properly or faithfully perform the duties imposed on or entrusted to such employee by his employer. The majority opinion does not dispute the finding but dismisses the issue on the ground that cases cited by the appellant "did not hold that the surety was liable to third parties because of unfaithful performance of duty by the insured's employee." Neither does the present case involve an attempt to hold the surety liable to a third party because of unfaithful performance of duty by the insured's employee. The present case is simply a declaratory judgment action by the insured against the insurance company to determine whether or not the insured has coverage if a loss is finally incurred in this case. In

addition, it should be reiterated that the trial court specifically found that Zuber not only committed fraudulent acts but that he specifically failed to faithfully perform his duties.

Fidelity bonds conditioned upon the faithful performance of duties by a bank officer have been held to be broken by his violation of any valid bylaw which the bank may adopt, and has also been held not only to guarantee the personal honesty of the officer but also his competency, efficiency, and diligence in the discharge of his duties. See, 10 Am. Jur. 2d *Banks* § 87 (1963); 35 Am. Jur. 2d *Fidelity Bonds and Insurance* § 21 (1967). See, also, *Thurston County v. Chmelka,* 138 Neb. 696, 294 N.W. 857 (1940); *Fiala v. Ainsworth,* 63 Neb. 1, 88 N.W. 135 (1901).

Finally, the majority opinion holds that an indemnity insurance policy in which any ambiguity is to be construed against the insurer which provides coverage for "any financial loss through any dishonest, fraudulent, or criminal act of any employee . . . or through the failure of any employee to properly or faithfully perform the duties imposed upon or entrusted to such employee by . . . the named insured . . ." does not insure against the consequences of the insured's own vicarious tort liability in any case. The bank paid an additional premium for the faithful performance coverage; there was an indisputable failure to perform; and the insured had reasonable expectations of coverage under such circumstances. "The contract of a surety for compensation receives an interpretation in favor of objectively reasonable expectations of the obligee." *Cornett v. White Motor Corp.,* 190 Neb. 496, 501, 209 N.W.2d 341, 344 (1973). The interpretation in this case was quite the contrary.

The District Court's order granting summary judgment to the defendant insurance company should have been reversed.

WHITE, J., joins in this dissent.