No. 45,609

PHILIP L. RONNAU, *Appellant,* v. CARAVAN INTERNATIONAL CORPO-RATION and JOHN T. DOYLE, *Defendants,* INSURANCE COMPANY OF NORTH AMERICA, Garnishee, *Appellee.*

(468 P. 2d 118)

Opinion filed April 11, 1970.

*Park McGee,* of Haskin, Noonan and McGee, of Olathe, argued the cause, and *Lawrence D. Munns,* of Russell, Johnson, Munns and Sterrett, of Topeka, was with him on the brief for appellant.

*Charles N. Henson, Jr.,* of Lillard, Eidson, Lewis and Porter, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: The appellant, Philip L. Ronnau, obtained a default judgment against defendant Caravan International Corporation (Caravan), and then obtained an order of garnishment directed to the appellee, Insurance Company of North America (INA), which denied indebtedness or liability to Caravan. The garnishment proceedings involved the construction of an indemnity policy issued by INA in favor of Caravan and styled Blanket Honesty Bond No. S-345794, and two claims by appellant under that policy. Following trial by the district court, it made findings of fact and conclusions of law, and entered judgment discharging INA, as garnishee. This appeal followed. We affirm.

The facts are undisputed. On December 3, 1965, the appellant commenced the action against Caravan and one John T. Doyle, former president of Caravan. The petition was drawn in two counts: Count I sought damages against Caravan for breach of contract, and Count II sought compensatory and punitive damages against Caravan and Doyle for fraudulent representations allegedly made by Doyle and other employees of Caravan. On or about December 10, 1965, INA received a copy of the petition from the appellant.

On June 8, 1966, the district court entered default judgment against Caravan and in favor of appellant on Count I in the amount of $101,874.22 with interest, and on Count II in the amount of $32,019.22 compensatory and $25,000 punitive damages, together with interest. The costs were taxed to Caravan. The judgment was entered pursuant to K. S. A. 60-237 (*b*) (2) (III), as a sanction against Caravan for its failure to produce documents as a part of discovery.

On September 26, 1966, the appellant forwarded INA a copy of the journal entry of judgment entered against Caravan and in favor of the appellant, and demanded payment of the judgment rendered on Count II of the petition from INA under the indemnity bond. INA refused to satisfy the judgment.

In this case, the pleadings, the findings and conclusions of the district court, a summary of the evidence, and the judgment are all properly incorporated in the record, and, in addition thereto, a

statement is contained of so much of the proceedings as is necessary to present the errors complained of. The parties' pleadings framed the issues. As indicated, INA's verified answer, as garnishee, denied indebtedness or liability to Caravan. The appellant's reply alleged INA was obligated and indebted to Caravan on the basis alleged in Claims One and Two of the reply.

Claim One was based on the judgment rendered against Caravan and in favor of the appellant in the amount of $57,019.22 (compensatory and punitive damages) together with interest, based upon the tortious conduct of officers, agents and employees of Caravan as alleged in Count II of the petition, which appellant asserted to be within the coverage of the Blanket Honesty Bond indemnifying Caravan against,

". . . any loss of money or other property, belonging to the Insured, or in which the Insured has a pecuniary interest, or for which the Insured is legally liable, or held by the Insured in any capacity whether the Insured is legally liable therefor or not, through any fraudulent or dishonest act or acts committed by any of the Employees . . . acting alone or in collusion with others . . . which the Insured shall sustain and discover as provided in Section . . ."

The bond further provided that upon knowledge or discovery of loss under the bond, the insured shall:

"(a) give notice thereof as soon as practicable to the Underwriter or any of its authorized agents, and (b) file detailed proof of loss, duly sworn to, with the Underwriter within four months after the discovery of loss."

It further provided:

"No action shall lie against the Underwriter unless as a condition precedent thereto, there shall have been full compliance with all the terms of this bond, nor until ninety days after the required proofs of loss have been filed with the Underwriter . . ."

Claim Two was based upon an unliquidated claim and proof of loss which Caravan made under the Blanket Honesty Bond in July, 1965. The claim and proof of loss was in the total sum of $16,394.06 for loss of money or property belonging to the insured, or in which the insured had a pecuniary interest, or which was in the possession of the insured, and alleged that Doyle misappropriated corporate funds to his personal use in the amount of $4,782.96, and that the sum of $11,611.10 was incurred by Caravan for rent and salaries through Doyle's acts in expending corporate funds contrary to specific instructions of, and without the knowledge of, its Board of Directors.

With respect to Claim One, the district court concluded the bond issued to Caravan by INA did not insure Caravan against liability to third parties and imposed no obligation upon INA to indemnify creditors of Caravan, such as the appellant; that the bond was not a third party beneficiary contract, nor a contract of insurance against liability; that the purpose and intent of the bond was to indemnify Caravan against direct losses of money or property through employee dishonesty—not to insure Caravan against liability to third parties; that Caravan had not sustained a direct loss of money or property by reason of appellant's judgment, and that the judgment was not a loss to Caravan within the coverage of the bond.

The court further found that, assuming the appellant's judgment was a loss to Caravan within the coverage of the bond, which it did not so conclude, INA's obligation to Caravan was dependent upon compliance with the bond requirements that it give notice of such loss to INA as soon as practical and file sworn detailed proof of the loss, and that the lack of proof that such requirements were met, or waived by INA, negated its obligation to Caravan on the bond.

We note here the appellant introduced no evidence that Caravan took any steps toward making any claim against INA on the bond by reason of appellant's judgment.

Concerning Claim Two, the district court found and concluded that, among other things, Caravan's claim against INA was un-liquidated, and the amount payable to Caravan under the bond, if any, was not measurable by the terms of the bond; that Caravan's claim against INA was not subject to garnishment, and could not become so until such time as INA's liability or indebtedness to Caravan was established and determined as between the parties to the bond; that appellant, as a judgment creditor of Caravan, had no standing in the garnishment proceedings to litigate Caravan's claim against INA on the Blanket Honesty Bond; that Caravan's proof of loss on the claim form was admissible only to prove compliance with policy terms regarding notice and proof of loss—it was not admissible as evidence in the case generally and had no probative value to establish loss, and, further, that item 5 of the Claim (for rent and salaries) was not a claim for loss within the coverage of the Blanket Honesty Bond, since the bond did not insure Caravan against the exercise of poor business judgment or extravagance in

incurring business expense. Concluding, the district court held that appellant's evidence did not establish a loss sustained by Caravan within the coverage of the Blanket Honesty Bond, and discharged INA from all liability to the appellant.

Again, we here note that following INA's denial of Caravan's claim and proof of loss on August 27, 1965, Caravan took no further action on the claim.

The only question upon the record before us is, what judgment should be given upon the law and the facts as found by the district court. We shall set forth the appellant's contentions with respect to Claims One and Two and discuss the correctness of the district court's conclusions in their respective order.

The appellant maintains that, in support of Claim One, the focal point of this issue is the fact the Blanket Honesty Bond is, at least in part, a policy of liability insurance, which insures against liability of Caravan to third persons, including himself. He contends that one policy of insurance may indemnify against both direct loss and against liability. He asserts the policy indemnifies or insures against four conditions, and that the third coverage—loss of money or other property for which the insured is legally liable—in consequence of fraudulent and dishonest acts of Caravan's employees, indemnifies against both direct loss and against liability. He argues that INA, as garnishee under the policy, agreed to insure Caravan for any loss of money or other property for which it was "legally liable"; that Caravan sustained a loss by the fraudulent conduct of its employees, and legal liability therefor was established by the judgment below in favor of appellant; that to hold otherwise would be to eliminate the words "for which the Insured is legally liable" from the policy, which cannot be done; that the words are clear and unmistakable and are to be construed in their natural and ordinary meaning; that no other provisions of the policy control their meaning, and the indemnity being against liabilty under the third coverage of the policy, INA became liable to appellant upon determination of Caravan's liability to him by reason of the judgment rendered on Count II of the petition.

We cannot agree with appellant's construction of the bond. The insuring clause and other pertinent provisions of the bond have been set forth. In clear and unambiguous terms, INA agreed to indemnify Caravan against loss of money or other property caused by "fraudulent or dishonest" acts of its employees. The category of insurance contracts into which the Blanket Honesty Bond falls

is termed fidelity guaranty insurance. A fidelity bond is an indemnity insurance contract whereby one for consideration agrees to indemnify the insured against loss arising from the want of integrity, fidelity or honesty of employees or other persons holding positions of trust. Such a contract is considered to be one on which the insurer is liable only in the event of a loss sustained by the insured. It is direct insurance procured by him in favor of himself, as contrasted with bonds running to the benefit of members of the public harmed by the misconduct of the covered individual, which bonds are third-party beneficiary contracts. (13 Couch on Insurance 2d, §§ 446:1, 446:2.)

For the insurer to be liable to its insured on a contract of employee fidelity insurance, the insured must sustain an actual loss of the nature insured against. The rule is stated in 13 Couch, *op. cit., supra,* § 46:219, p. 253, as follows:

"The contract of fidelity insurance is a contract against loss. It is a contract of indemnity on which the insurer is liable only in the event of loss sustained by the obligee in consequence of conduct of the nature specified in the contract. It has been held that there can be no recovery on a fidelity bond in the absence of loss or damage to the insured, and lack of any pecuniary loss by the obligee from the wrongful acts constitutes a good defense, since in such case no recovery can be had."

See, also, 35 Am. Jur., 2d, Fidelity Bonds and Insurance, § 39, p. 530; 41 Am. Jur., 2d, Indemnity, § 29, p. 720.

As indicated, the appellant maintains the Blanket Honesty Bond insured against the liability of Caravan to third persons, and that INA became obligated on the bond to Caravan when it became liable to the appellant by reason of his judgment. Legal liability of the named insured to a third party does not, however, create a legal liability of INA to third parties under the bond. The claim of the third party appellant is not against INA, but against Caravan for failure to pay the judgment. Since contracting parties are presumed to act for themselves, an intent to benefit a third person should be clearly expressed in the contract. (*American Empire Ins. Co. of S.D. v. Fidelity & Dep. Co. of MD.,* 408 F. 2d 72, 77.)

Manifestly, it would not seem from the nature of a fidelity bond that uninsured third parties should be allowed to recover. Nowhere in the language of the bond do we find that INA assumed an obligation to respond to liability of Caravan to third persons, such as the appellant here. The obligation expressed is to indemnify Caravan against loss of money or other property of a described

class. The obligation of the bond runs to Caravan, to respond to actual loss it sustains, not the loss of third persons. Under no reasonable construction of the bond can it be said to insure against Caravan's liability to third persons, nor can it be considered to be a third-party beneficiary contract. It was a contract designed solely for the benefit of the formal parties thereto, insuring against loss to Caravan of the described money or property due to the fraudulent or dishonest acts of its employees.

We are of the firm opinion that INA's contract meant exactly what it said, that is, it insured Caravan only against the defalcations of its employees. The protection of the bond was for the protection of Caravan alone. It was in the nature of a personal insurance contract. The appellant was not a party to the contract, was not named or referred to therein, and had no legal rights thereunder. In short, INA's liability does not arise until Caravan has sustained a proven loss.

A similar question was presented in *Carter v. Insurance Co.*, 76 Kan. 275, 91 Pac. 178, and this court said:

"The liability of the insurance company under the policy must be measured by its terms. It will be observed that the contract of the insurance company was with the bridge company, and not with the employees. The contract was indemnity against loss from liability, and not insurance against liability. In its general features it provided for making good the loss suffered by the assured, or rather for reimbursing it to the extent of its loss. Until the assured had met with a loss there was no occasion to pay indemnity—no reason to reimburse until something had been paid by the assured . . ." (l. c. 277, 278.)

There is a well-recognized difference between contracts of indemnity against loss and contracts of indemnity against liability. In the former, the insurance company does not become liable until the insured has suffered a proven loss, whereas in the latter, the obligation of the insurance company becomes fixed when the liability attaches to the insured. (*Dunn v. Jones*, 143 Kan. 218, 53 P. 2d 918; *Burks v. Aldridge*, 154 Kan. 731, 121 P. 2d 276.) In the latter case we used the following language:

". . . The distinction, as generally stated, between 'liability insurance' and 'indemnity insurance' is simply that in the former the coverage attaches when the liability attaches, while in the latter no action lies against the insurer until an actual loss in the discharge of the liability has been sustained by the insured . . ." (l. c. 735.)

The bond upon which the appellant is attempting to recover is a personal insurance contract running between INA and Caravan,

which indemnifies only the insured. As we have seen, the terms of such a bond are not broken until the insured—Caravan—has sustained an actual loss. No loss of money or property was sustained by Caravan as a result of the judgment, and INA was under no obligation to the appellant.

The appellant's reliance upon *Alberts v. American Casualty Company of Reading*, 88 Cal. App. 2d 891, 200 P. 2d 37, is misplaced. That was an action brought by the owner of a hotel to recover from its insurer under an employee fidelity bond insuring against loss of money belonging to the insured, or in which the insured had a pecuniary interest, or for which the insured was legally liable, or held by the insured in any capacity whether the insured was legally liable therefor or not. The hotel manager disappeared with hotel receipts and with a sum of money belonging to a guest, which was in the hotel's custody for safe keeping. The guest sued the plaintiff for the money deposited, which suit was pending at the time the plaintiff commenced his action against the insurer. The guest was made a party defendant in the plaintiff's action. He answered, and prayed for and was granted judgment against the plaintiff, and upon payment thereof, he was enjoined from prosecuting his pending action. The court allowed recovery by the plaintiff for both sums, which clearly were losses to the insured within the coverage of the bond—money belonging to the insured (receipts), and money for which the insured was "legally liable," or held by the insured in any capacity whether the insured was legally liable therefor or not (guest's money in hotel's custody). On the facts of *Alberts*, which involved loss of money taken from the possession of the insured by a dishonest employee, the case is clearly not authority for appellant's position the bond in question insures against liability to a third person as a result of fraud perpetrated by the insured's employee against such third person.

The district court did not err in concluding the bond issued to Caravan by INA did not insure Caravan against liability to third parties, and imposed no obligation upon the insurer to indemnify Caravan's creditors.

Claim Two of appellant involves the right of a judgment creditor to subject to garnishment an unliquidated claim of the judgment debtor against its insurer, which arose out of alleged tortious conduct of the debtor's employees.

The district court found Caravan's claim made on the Bond in

July, 1965, was denied by INA, and following denial, was not further pursued by Caravan. The appellant concedes that under the exemption to garnishment set forth in K. S. A. 60-724 (2), the claim in question would not be subject to garnishment if it were unliquidated, and did not arise under contract. No extended discussion of the point is required. The district court found the claim was unliquidated, and we are of the opinion it did not arise out of contract within the meaning of 60-724 (2). The claim was based upon alleged tortious acts of Doyle in misappropriating corporate funds to his personal use, and for rents and salaries. The court correctly found there was no coverage under the bond for loss with respect to rent and salaries. The part of the claim dealing with misappropriation of corporate funds was tortious. It was held in *Lewis v. Barnett*, 139 Kan. 821, 33 P. 2d 331, 93 A. L. R. 1082, that a defendant's claim against a garnishee must be liquidated to be reached by the defendant's creditors. In order for a garnishee to be subject to a judgment, the indebtedness which he may owe the defendant on a claim not arising out of contract must be liquidated as to amount. Tort claims are liquidated only by judgment or settlement. (Gard, Kansas Code of Civil Procedure, Attachment and Garnishment, § 60-724, p. 606.) The unliquidated claim was clearly not subject to garnishment, and the district court did not err in concluding that Caravan's claim against INA was not subject to garnishment. (*Reed v. Ziegler*, 175 Kan. 635, 265 P. 2d 855.)

Other points have been raised and briefed by the parties, but in view of conclusions heretofore announced, it is unnecessary to discuss and decide them.

We have carefully examined the record and find no error. The judgment of the district court is affirmed.