BRALKO HOLDINGS, LTD v INSURANCE COMPANY OF NORTH AMERICA

Docket No. 124595. Submitted October 9, 1991, at Detroit. Decided March 2, 1992, at 9:15 A.M.

Bralko Holdings, Ltd., brought an action in the Wayne Circuit Court against Barbret-LaBadie, Inc., alleging wrongful payment of commissions to Barbret-LaBadie for the sale of certain partnership interests. An offering circular for the partnership interests had prohibited the payment of such commissions. A consent judgment was entered, and Bralko brought a garnishment action in the Wayne Circuit Court seeking to collect on the judgment under a broker's fidelity bond issued by Insurance Company of North America to Barbret-LaBadie that provided that the insurer would indemnify and hold Barbret-LaBadie harmless from any loss through any dishonest or fraudulent act of any employee. The court, Marvin R. Stempien, J., granted summary disposition for Insurance Company of North America, finding that the insurer was not indebted on the bond to Barbret-LaBadie and, therefore, was not subject to the garnishment action. Bralko appealed.

The Court of Appeals *held:*

Bralko may not collect under the fidelity bond. A fidelity bond is insurance procured for the benefit of the insured, not third parties, and the insurer is liable only in the event of a loss by the insured. The policy provided that the insurer would indemnify the insured and hold it harmless from loss, not from liability. Because Barbret-LaBadie was not entitled to the commissions, it would not suffer a loss by returning the money, and, therefore, the bond was not subject to garnishment by Bralko in its collection efforts with regard to its judgment against Barbret-LaBadie.

Affirmed.

1. BONDS — FIDELITY BONDS — INSURANCE — LOSS — LIABILITY.

A blanket or fidelity bond is an indemnity insurance contract

REFERENCES

Am Jur 2d, Fidelity Bonds and Insurance §§ 1, 3, 12, 18, 39.

See the Index to Annotations under Fidelity Bonds and Insurance.

that, for consideration, indemnifies the insured against loss arising from the want of integrity, fidelity, or honesty of employees or other persons holding positions of trust in a company; it is insurance procured for the benefit of the insured, not third parties, and the insurer is liable only in the event of a loss by the insured; fidelity bonds indemnify only against a loss, not against liability.

2. BONDS — FIDELITY BONDS — INSURANCE — LOSS.

There is no loss within the meaning of a fidelity bond insuring against loss by the insured where the insured is found not to have been entitled to payment of money received and is ordered to reimburse the payor.

*Joseph Falcone, P.C.* (by *Joseph Falcone*), for Bralko Holdings, Ltd.

*Mager, Monahan, Donaldson & Alber* (by *Lita Masini Popke*), for Insurance Company of North America.

Before: MACKENZIE, P.J., and SAWYER and JANSEN, JJ.

SAWYER, J. Bralko Holdings, Ltd., appeals from an order of the circuit court granting summary disposition in favor of Insurance Company of North American (ICNA) in Bralko's garnishment action against a broker's blanket fidelity bond issued by ICNA covering third-party-defendant Barbret-LaBadie, Inc. We affirm.

In the underlying action, Bralko obtained a $100,000 consent judgment against Barbret-LaBadie on a claim based upon the payment of $100,000 in commissions to Barbret-LaBadie by Bralko for the sale of certain partnership interests. An offering circular for the partnership interests had prohibited the payment of commissions.[1] In an effort

---

[1] The underlying litigation also involved a direct action by plaintiffs against defendants as well as a shareholders derivative action. That case was the subject of an opinion by this Court in *Koerber v Alter,*

to enforce the judgment, Bralko brought this garnishment action to collect on the judgment under the $25,000 broker's fidelity bond issued by ICNA to Barbret-LaBadie.

The trial court issued a written opinion holding that ICNA was not indebted on the bond to Barbret-LaBadie and, therefore, not subject to the garnishment action. We agree.

The only question before us is whether Bralko may collect under the bond. Bralko argues that the insurance policy at issue insures against liability, not just against loss. We disagree. At issue is an insurance policy known as a "broker's blanket bond." A broker's blanket bond such as the one at issue here is a form of fidelity bond. See 9A Appleman, Insurance Law & Practice, § 5735, p 490. Fidelity insurance indemnifies the insured against a loss from want of honesty or fidelity of its employees. *Id.* at § 5661, p 294. The policy at issue here provided that ICNA would indemnify and hold harmless Barbret-LaBadie "from and against any losses, as hereinafter set forth." The losses covered under the bond include loss "through any dishonest or fraudulent act of any of the Employees, committed anywhere and whether committed directly or by collusion with others, including loss of Property through any such act of any of the Employees."

The leading case in this area is *Ronnau v Caravan Int'l Corp,* 205 Kan 154; 468 P2d 118 (1970). In *Ronnau,* the plaintiff obtained a judgment against the defendant on a count seeking compensatory and punitive damages for fraudulent misrepresen-

unpublished opinion per curiam, decided April 6, 1988 (Docket No. 79369). This case has also previously been before this Court on a prior grant of summary disposition in favor of Bralko, resulting in a reversal in *Bralko Holdings, Ltd v Ins Co of North America,* unpublished opinion per curiam, decided October 4, 1989 (Docket No. 109574).

tation. The plaintiff recovered more than $57,000 on this count and sought to garnish the proceeds of a fidelity bond issued to the defendant by Insurance Company of North America.

The Kansas Supreme Court rejected the argument that the fidelity bond insured against liability as well as loss. The court noted that a fidelity bond "is an indemnity insurance contract whereby one for consideration agrees to indemnify the insured against loss arising from the want of integrity, fidelity or honesty of employees or other persons holding positions of trust." *Id.* at 159. It is insurance procured for the benefit of the insured, not third parties, and the insurer is liable only in the event of a loss by the insured. *Id.* The *Ronnau* court explained the differences between indemnity against loss and indemnity against liability:

> There is a well-recognized difference between contracts of indemnity against loss and contracts of indemnity against liability. In the former, the insurance company does not become liable until the insured has suffered a proven loss, whereas in the latter, the obligation of the insurance company becomes fixed when the liability attaches to the insured. [*Id.* at 160.]

The conclusion in *Ronnau* that fidelity bonds only indemnify against loss, and not against liability, has been followed in a number of other jurisdictions. See, e.g., *Anderson v Employers Ins of Wausau,* 826 F2d 777, 780 (CA 8, 1987); *Commercial Bank of Bluefield v St Paul Fire & Marine Ins Co,* 175 W Va 588; 336 SE2d 552 (1985); *Foxley Cattle Co v Bank of Mead,* 196 Neb 587; 244 NW2d 205 (1976); see also *Falcon v Beverly Hills Mortgage Corp,* 166 Ariz App 311; 802 P2d 1010 (1990); *175 East 74th Corp v Hartford Accident & Indem-*

*nity Co,* 51 NY2d 585; 435 NYS2d 584; 416 NE2d 584 (1980).

Bralko endeavors to distinguish *Ronnau* by pointing to the "hold harmless" language in the bond at issue in this case and the fact that *Ronnau* makes no mention of a "hold harmless" clause in the bond at issue in *Ronnau.* However, it provides little explanation of how the "hold harmless" language translates into liability coverage beyond observing that the "hold harmless" language must mean something and, therefore, it must mean liability coverage. We disagree.

The question to be answered is from what, exactly, was ICNA holding its insured harmless. Turning to the policy, it provides that the insurer will indemnify and hold the insured harmless from *losses* sustained *by the insured.* The policy does not, by its terms, provide that the insurer will hold the insured harmless from its liability.[2] Thus, whatever differences in meaning the drafters of the policy intended between the terms "indemnify" and "hold harmless," those differences are within the context of insuring against loss, not against liability. At most, the policy insures against the loss sustained when a judgment is paid.[3] Because the insured has yet to pay anything on the judgment, it has yet to sustain a loss.

Viewed another way, the insured, Barbret-LaBadie, has not only yet to incur a loss, it cannot incur a loss under the meaning of the policy. Bralko's theory against the insured was that the

[2] In fact, certain language of the policy not at issue here appears to include within coverage any loss sustained by the loss of property belonging to third parties and in the insured's custody. Such coverage, however, is without regard to whether "the Insured is liable therefor."

[3] We caution that this is *not* the interpretation of the policy that we draw. As explained in the text of the opinion, our interpretation is much narrower.

insured had no right to the commissions it received. Bralko received a judgment for the refund of those commissions. How, then, can it be said that Barbret-LaBadie has suffered a loss? One cannot lose that to which he is not entitled. That is, if Barbret-LaBadie was not entitled to the $100,000 in commissions, then it does not suffer a loss. Rather, it is merely returning money that belonged to Bralko; Barbret-LaBadie has lost nothing.[4]

In summary, we hold that a blanket or fidelity bond, such as the one at issue here, insures against loss, but not against liability. Accordingly, the relevant inquiry is whether the insured has suffered a loss, not whether the insured is liable to a third party. Because there has been no showing of a loss by the insured in this case, ICNA was not liable on the fidelity bond to the insured and, therefore, the bond was not subject to garnishment by Bralko in its collection efforts with regard to its judgment against the insured.

Affirmed. ICNA may tax costs.

---

[4] Taken to an extreme, Bralko's theory would allow an insured to rob a bank of a large sum of money and then claim a "loss" on its fidelity bond when called upon to return the money to the bank.