**RESOLUTION TRUST CORPORATION, in its capacity as Receiver of United Savings Bank, F.S.B., Plaintiff,**

v.

**Donald J. MOSKOWITZ, et al., Defendants.**

Civ. A. No. 93–2080.

United States District Court, D. New Jersey.

March 14, 1994.

Susan L. Hall, Williams, Caliri, Miller & Otley, Wayne, NJ, for plaintiff Resolution Trust Corp.

James M. Mulvaney, Nancy McDonald, McElroy, Mulvaney, Deutsch & Mulvaney, Morristown, NJ, for defendant Fidelity & Deposit Co. of Maryland.

## OPINION

WOLIN, District Judge.

This matter is opened to the Court by defendant Fidelity & Deposit Company of Maryland ("F & D") to dismiss all cross-claims for contribution and indemnification which have been or hereinafter may be filed against F & D by codefendants, for failure to state a claim upon which relief can be granted. The motion was unopposed. Having considered the submissions of F & D, the Court will grant its motion.

## BACKGROUND

The Court is confronted with yet another instance where the Resolution Trust Corporation ("RTC") has had to step into the shoes of an insolvent bank and liquidate the institution. This action concerns the closing and liquidation of United Savings Bank, SLA ("United"), of Paterson, New Jersey. On May 15, 1990, the Office of Thrift Supervision ("OTS") declared United insolvent and appointed the RTC to act as its receiver. *See* Complaint for Declaratory Relief, Ex. B at ¶ 6. On the same day, a new federal and savings association called United Savings Bank, F.S.B. ("United Federal") was formed. *Id.* at ¶ 7. The RTC, as receiver of United and United Federal entered into an agreement which transferred United's right, title and interest in any claim against United's former directors and offices to the latter. *Id.* at ¶ 7. OTS then immediately placed United Federal into conservatorship and appointed the RTC as its conservator. *Id.* at ¶ 8. On December 12, 1990, OTS closed United Federal and appointed the RTC to act as its receiver. *Id.* at ¶ 9.

Like a medical examiner pouring over a body to determine the cause of death, the

RTC has spent the past three years trying to ascertain the cause of United's demise. On May 14, 1993, the RTC as receiver for United Federal filed a blunderbuss-like complaint against certain of United's former officers and directors, along with others associated with United.[1] In total, thirty-five defendants, including ten former directors and officers of United and 4 individuals who are the executors and/or beneficiaries of the estates of former directors and officers of United, are named defendants. The claims allege that each is liable for United's insolvency. *Id.* at ¶ 3. Specifically, the RTC asserts causes of action for breach of contract, negligence, gross negligence, breach of fiduciary duty, conversion and fraud.

RTC claims that United's losses due to the fraud and dishonesty of its employees and that those losses are covered by a Financial Institution Bond ("the Bond") defendant F & D issued to United Savings Bank, F.S.B. ("United").[2] In Count 15, RTC claims that the failure of F & D to honor its obligation to pay for those losses constitutes a breach of contract and that F & D's breach has caused it to suffer damages in excess of $2.5 million.

F & D filed a counterclaim seeking recision of the Bond on grounds, *inter alia,* that its issuance was fraudulently induced by misrepresentations made by United in connection with the Bond application. In addition, F & D filed crossclaims for contribution, indemnification and subrogation against certain co-defendants.

Many of the co-defendants in this action have filed crossclaims against F & D for contribution pursuant to the New Jersey Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A–1 *et seq.,* and/or common law indemnification.

1. The RTC has also sued accountants, attorney's, appraisers, a fidelity bond carrier and certain borrowers.

2. In the Bond, F & D agreed to indemnify United for
Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others. Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent:

## DISCUSSION

F & D seeks to have all of the cross claims dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted for three reasons. F & D contends that the language of the Bond must control. The express terms of the bond limit any right of recovery to the named insured, United. Moreover, the overwhelming majority of courts confronted with similar fidelity bonds have rejected third party claims and have limited recovery exclusively to the named insured. They assert that F & D cannot be a joint tortfeasor required to pay contribution under the Joint Tortfeasor Contribution Law because RTC's claims against them are not tort claims. And, third, they argue that F & D is not subject to common law indemnity as there is no "special legal relationship" between F & D and codefendants and because the loss suffered by RTC as a result of F & D's alleged breach is different in kind from that caused by codefendants' tortious conduct. Each reason will be discussed and analyzed separately.

## I. The Express Terms of the Bond

It is well settled that when the terms of an insurance contract are clear and unambiguous, it is the court's duty to enforce the contract as written and in accordance with its plain and commonly understood meaning. *State, DEP v. Signo Trading International, Inc.,* 235 N.J.Super. 321, 332, 562 A.2d 251 (1989), *aff'd,* 130 N.J. 51, 612 A.2d 932 (1992). *See also Doolan v. Doolan Steel Corp.,* 591 F.Supp. 1506, 1509–1510 (E.D.Pa.1984), *aff'd,* 772 F.2d 894 (3d Cir. 1985). While ambiguities in insurance con-

(a) *to cause the Insured to sustain such loss,* and
(b) to obtain financial benefit for the Employee or another person or entity.
*See* McDonald Affidavit, Exhibit A (hereinafter "Fidelity Bond"), p. 2. The penal sum of the bond was $2.5 million with a deductible of $25,-000.

tracts are to be resolved in favor of the insured, in cases where the language is unambiguous, "there is no place for judicial construction" and "a court has no authority to alter, rewrite or modify the contract." J. Appleman, *Insurance Law and Practice*, § 7384 at 50–56 (1976); *see also Kindervater v. Motorists Casualty Ins. Co.*, 120 N.J.L. 373, 199 A. 606 (1938).

Here, the Bond clearly limits F & D's indemnity obligation to losses suffered by United. Insuring Agreement A of the Bond provides, in pertinent part that

> [F & D] in consideration of an agreed premium, and in reliance upon all statements made and information furnished to [F & D] by the insured in applying for this bond, and subject to the Declarations, Insuring Agreements, General Agreements, Conditions and Limitations and other terms hereof, agrees to indemnify *the Insured....*

Fidelity Bond, p. 2. (Emphasis added). That the Bond was to cover losses incurred by United is underscored by Section 10, entitled "Ownership," which states

> This bond shall apply to loss of Property (1) owned by the Insured, (2) held by the insured in any capacity, or (3) for which the Insured is legally liable. *This bond shall be for the sole use and benefit of the Insured named in the Declarations.*

Fidelity Bond, p. 7. (emphasis added).

It is clear that the Bond is direct insurance procured by the insured in favor of himself. Hence, only the insured, in this case United, is covered by the Bond.

While this is an issue of first impression in this circuit, courts which have confronted the issue have held that the right to recover under a fidelity bond for employee defalcation belongs solely to the insured absent some provision in the bond to the contrary. *See e.g., Anderson v. Employers Ins. of Wausau,* 826 F.2d 777, 780 (8th Cir.1987); *Ronnau v. Caravan Int'l Corp.,* 205 Kan. 154, 468 P.2d 118 (1970); *Western Nat'l Bank of Casper v. Hawkeye–Security Ins. Co.,* 380 F.Supp. 508, 511 (D.Wyo.1974). In so hold-

ing, these cases have focused on the difference between fidelity bonds and liability insurance. The *Everhart v. Drake Management, Inc.* court drew the distinction thusly:

> [L]iability insurance protects against claims for losses to persons or property (owned by such stranger) not a party to the contract. Liability insurance protects against losses sustained by parties which, although within foreseeable expectation, are not predictable as to person, time, place or nature of occurrence or damage. Fidelity insurance undertakes to protect the assured against loss incurred by the assured or any predetermined specified group.

627 F.2d 686, 691–692 (5th Cir.1980). *See also Ronnau,* 469 P.2d at 122 (fidelity insurance "is direct insurance procured by him in favor of himself, as contrasted with bonds running to the benefit of members of the public harmed by the misconduct of the covered individual, which bonds are third-party contracts"); *Three Garden Village v. U.S.F. & G.,* 318 Md. 98, 115, 567 A.2d 85 (1989) ("Fidelity bonds are a form of first party coverage, indemnifying the obligee for its loss, and are not a form of third party coverage, indemnifying the insured for its liability to third persons.").

In *Ronnau,* 469 P.2d at 122, the court discussed the nature of fidelity insurance and the rationale underlying the limitation on third-party claims.

> A fidelity bond is an indemnity insurance contract whereby one for consideration agrees to indemnify the insured against loss arising from the want of integrity, fidelity or honesty of employees or other persons holding positions of trust. Such a contract is considered to be one on which the insurer is liable only in the event of a loss sustained by the insured.

Based on these distinctions, courts have not extended the plain language of fidelity bonds to encompass claims by third-parties.

What is unclear is whether RTC as the receiver of United is covered by the Bond. Pursuant to 12 U.S.C. §§ 1821(d)(2)(A) and (B)(ii), RTC succeeds to all of the rights, titles, powers and privileges of the failed bank including the right to bring claims in

pursuit of obligations due the bank. Further, 12 U.S.C. § 1821(d)(12)(B) permits RTC to "enforce or recover under a directors or officers liability insurance contract or depository institution bond." Thus, it would seem that RTC as receiver for United can step into the shoes of the insured and enforce the Bond.

■ As RTC did not oppose this motion, this argument was not raised. However, it is clear that the plain language of the Bond would prohibit RTC from trying to recover under the Bond. Section 3 of the Bond, entitled "Discovery" states that coverage "applies to *loss discovered by the Insured during the Bond Period.*" Fidelity Bond, p. 5. (emphasis added). The "Bond Period" is defined as running "from 12:01 a.m. on February 17, 1989 to 12:01 a.m. on February 17, 1990." *See* Fidelity Bond, Daily Report. While it may be contested exactly when discovery occurred,[3] Section 12, "Termination or Cancellation", provides that "[t]ermination of the bond ... terminates liability for any loss sustained by such Insured which is discovered after the effective date of such termination." Fidelity Bond, p. 7.

RTC was not appointed receiver until three months after the Bond was cancelled. At best, then, RTC could not have discovered a loss until that time. Accordingly, RTC cannot step into the shoes of United to recover under the Bond.

## II. F & D as a Joint Tortfeasor

■ Numerous codefendants have asserted crossclaims for contribution against F & D pursuant to the New Jersey Joint Tortfeasor Contribution Law, N.J.S.A. 2A:53A–1 *et seq.* F & D argues that the codefendants cannot invoke this law because F & D cannot be found liable "in tort" to RTC.

The New Jersey Joint Tortfeasor Contribution Law provides that the "right to contribution exists among joint tortfeasors." *Id.*

§ 2A:53A–2. The statute defines "joint tortfeasors" as "two or more persons jointly or severally liable in tort for the same injury." *Id.* § 2A:53A–1. The only claim asserted by RTC against F & D is for the alleged breach of its contractual obligation under the bond. *See* Amended Complaint, Count 15. RTC did not allege that F & D committed any tortious conduct. In fact, if F & D is liable for anything its liability is contractual in nature. Hence, F & D is not a "joint tortfeasor" and cannot be liable to any codefendant for contribution. Accordingly, the Joint Tortfeasor Contribution Law is inapplicable and codefendants' crossclaims for contribution must be dismissed.

## III. F & D and Common Law Indemnity

■ In *Allied Corp. v. Frola,* 730 F.Supp. 626, 630 (D.N.J.1990), this court defined when indemnification is available under New Jersey Law: "when a contract explicitly provides for indemnification or when a special legal relationship between the parties creates an implied right to indemnification. In either case a party is entitled to indemnification only if he or she is without fault and his or her liability is purely constructive, secondary or vicarious." (Citations omitted).

The codefendants do not assert an explicit right to indemnification but rather an implied right based on allegations that their liability to RTC is merely constructive, vicarious or secondary to that of F & D. F & D argues that "as a matter of law, codefendants may not seek implied indemnification from F & D for two reasons: (1) no "special legal relationship" between any one of them and F & D exists; and (2) codefendant's [sic] potential liability to plaintiff is separate and distinct from that of F & D." F & D's Brief, p. 13.

The Court concurs with F & D's argument. Codefendants have not pled, and cannot demonstrate the existence of a special legal relationship which would support indemnifica-

---

3. Section 3 also defines "discovery":

Discovery occurs when the Insured first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred,

even though the exact amount or details of loss may not then be known.

Discovery also occurs when the Insured receives notice of an actual or potential claim in which it is alleged that the Insured is liable to a third party under circumstances, which, if true, would constitute a loss under this bond.

tion. Codefendants and F & D never had a lessor-lessee relationship, *id.* at 639, nor a bailor-bailee relationship, *see Ramos v. Browning Ferris Industries,* 103 N.J. 177, 189, 510 A.2d 1152 (1986), nor a principal-agent relationship. *Hagen v. Koerner,* 64 N.J.Super. 580, 586–87, 166 A.2d 784 (1960). And, based upon the language of the Bond, they did not even have an insurer-insured relationship. Thus, it is unclear exactly what "special relationship" codefendants thought they had which would have satisfied the prerequisites for indemnification. As codefendants have not suggested such a relationship in their pleadings, it should not be for this Court to look into a crystal ball and find a relationship to save codefendants from this Rule 12(b)(6) attack.

■ Moreover, codefendants have failed to allege that they and F & D are responsible for the same ultimate loss. A claim of indemnity arises only if the indemnitor and indemnitee are responsible to plaintiff for the same ultimate loss. What we have here is two distinct independent sets of wrong. The loss occasioned by F & D is entirely different from and independent of the loss caused by codefendants. As discussed above, F & D's liability, if any, is based exclusively on its alleged breach of contract; the codefendant's liability is premised in tort.

Therefore, the cross claims for indemnification will also be dismissed.

### CONCLUSION

For the reasons discussed above, F & D's motion to dismiss all cross-claims for indemnification and contribution for failure to state a claim will be granted.